UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Debbie Veith, | ) | |
| | ) | CASE NO. 5:11CV2542 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Portage County, Ohio, Board of Commissioners, et al., | ) | ORDER |
| | ) | |
| | ) | |
| Defendants. | ) | (Resolves Docs. 76, 77) |

Pending before the Court is Plaintiff Debbie Veith's motion to compel (Doc. 76) and Defendants' motion for a protective order (Doc. 77).  For the reasons stated herein, the motion to compel is DENIED, and the motion for a protective order is GRANTED.

During discovery in this matter, Veith has sought a mortality and morbidity review from the Health Care Defendants.  The Health Care Defendants do not deny that they possess such a document, but have refused to release the document.  Veith, therefore, has sought to compel its production.  In response, the Health Care Defendants have sought a protective order, asking this Court to recognize a federal privilege that would apply to the review.  The Court now resolves the parties' pending motions.

>F.R.E. 501 provides:
>
>Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

The Supreme Court has discussed the background of this rule:

> The common-law principles underlying the recognition of testimonial privileges can be stated simply. "'For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'" *United States v. Bryan*, 339 U.S. 323, 331 (1950) (quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)). *See also United States v. Nixon*, 418 U.S. 683, 709 (1974). Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a "'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel*, 445 U.S., at 50 (quoting E*lkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)).

*Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (footnote omitted). Accordingly, a federal common law privilege should not be created and applied unless it "'promotes sufficiently important interests to outweigh the need for probative evidence....'" *Id.* at 9–10 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). In making this determination, a district court must consider: (1) whether the privilege serves private and public interests; (2) the evidentiary benefit that would result from denial of the privilege; and (3) recognition of the privilege among the States. *See Jaffee*, 518 U.S. at 10–12.

> To that end, the asserted privilege: (1) must be "'rooted in imperative need for confidence and trust,'" and (2) "'must also serv[e] public ends.'" [*Jaffee*, 518 U.S.] at 10–11. Finally, the Court observed that the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one. *Id*. at 12–13. After all, "state legislatures are fully aware of the need to protect the integrity of the factfinding functions of their courts" and a "State's promise of confidentiality would have little value if the [individuals it protects] were aware that the privilege would not be honored in a federal court." *Id*. at 13.

*Sevilla v. United States*, 852 F.Supp.2d 1057, 1059 (N.D.Ill. 2012)

The *Sevilla* court examined an issue very similar to the one presented herein. In doing so,

that court noted that "[t]he legislatures in every state in the Nation have concluded that without a peer review privilege, physicians will be discouraged from participating in the full and frank expression of opinion that is essential if peer review is to fulfill its vital role in advancing the quality of medical care."  *Id.* at 1060.  Other courts have noted as follows:

> To recognize hospital review or disciplinary proceedings as privileged in the context of a malpractice action will generally have little impact upon the plaintiff's ability to prove a meritorious claim. For the crucial issue in that type of case is not what occurred at the review proceeding, but whether the defendant was in fact negligent in his care and treatment of the plaintiff. As the court in *Bredice* went on to note, "'what someone ... at a subsequent date thought of these acts or omissions is not relevant to the case.'" *Id.* at 251, quoting *Richards v. Maine Central R.*, 21 F.R.D. 590, 592 (D.Me. 1957). More importantly, the exclusion of that information will not prevent the plaintiff from otherwise establishing a valid claim.

*Memorial Hospital for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1062 (7th Cir. 1981).

However, this Court recognizes that a substantial number of federal courts have declined to expand the federal common law to include a privilege for physician peer review materials.

> [T]he great weight of the *federal* cases, many of them decided after *Jaffee*, counsel that such a privilege does not exist in the federal common law, and should not be recognized in a case such as this. Furthermore, as alluded to above, predictable law is sound law, and consistent and uniform jurisprudence is what should undergird the federal judiciary.

*Nilavar v. Mercy Health System-Western Ohio*, 210 F.R.D. 597, 607 (S.D.Ohio 2002) (emphasis sic) (declining to recognizing a physician peer review privilege in an antitrust suit).  These decisions, however, are often fact dependent.

> Although there appears to be consensus among lower courts and in other circuits that no federal privilege protects medical peer review materials in civil rights or antitrust actions, *see, e.g., Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007) (racial discrimination action); *Virmani v. Novant Health, Inc.*, 259 F.3d 284, 289 (4th Cir. 2001) (racial discrimination action); *Mem'l Hosp. v. Shadur*, 664 F.2d 1058, 1063 (7th Cir. 1981) (per curiam) (antitrust action); *Zoom Imaging v. St. Luke's Hosp. & Health Network*, 513 F.Supp.2d 411, 415–16 (E.D.Pa. 2007) (antitrust action); *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 561 (S.D.N.Y. 1996) (racial discrimination action), no such consensus has developed in medical or

>   dental malpractice actions. *See Tucker v. United States*, 143 F.Supp.2d 619, 626 (S.D.W.Va. 2001) (declining to recognize federal peer review privilege); *Syposs*, 63 F.Supp.2d at 304 (declining to recognize federal peer review privilege); *but see KD ex rel. Dieffenbach v. United States*, 715 F.Supp.2d 587, 597–98 (D.Del.2010) (recognizing peer review privilege); *Weekoty*, 30 F.Supp.2d at 1348 (recognizing self-critical analysis privilege).

*Francis v. United States*, 2011 WL 2224509, at *4 (S.D.N.Y. May 31, 2011).

Similar to the analysis in *Francis*, the Health Care Defendants have asserted that the rationale in many of the cases that rejected the privilege is undermined by the fact that those cases were not medical malpractice actions. In that regard, the Court notes that while the complaint contains both a § 1983 action and medical malpractice claims, the § 1983 action sounds directly in malpractice. In fact, to succeed, Veith would need to show more than malpractice to succeed on her deliberate indifference claim. Accordingly, the Court is persuaded that the precedents reviewing the privilege in the medical malpractice context are most informative.

As the *Shadur* court noted in the Seventh Circuit, recognizing the privilege in a medical malpractice case does not affect a plaintiff's ability to prove his case. In fact, such an after-the-fact review has no relevance to the underlying claim.

>   "In contrast to the significant public and private interests supporting recognition of the privilege, the likely evidentiary benefit that would result from the denial of the privilege is modest." [*Jaffee*], 518 U.S. at 11. As discussed previously, courts that have declined to recognize a peer review privilege in the past have done so, primarily, in civil rights actions, and, in large measure, because peer review materials in such actions have been deemed essential to the plaintiff's case. *See Univ. of Pa.*, 493 U.S. at 193 ("Often ... disclosure of peer review materials will be necessary ... to determine whether illegal discrimination has taken place. Indeed, if there is a 'smoking gun' to be found ... it is likely to be tucked away in peer review files."); *Johnson*, 169 F.R.D. 550, 558–59, n. 12 ("While the confidentiality of peer review records undoubtedly is an important state interest, in many cases, the only proof of employment discrimination that a plaintiff might have may be contained in such records."). No similar circumstance attends in this action. The plaintiffs are in possession of all the decedent's MLK records and they may procure their own expert to evaluate the quality of care the decedent received at MLK. Depending on the conclusion(s) reached during the review, the quality assurance records may aid

the plaintiffs in prosecuting this action, but the records are by no means the only way the plaintiffs may establish their claims against the defendant.

*Francis v. United States*, 2011 WL 2224509, at *5 (S.D.N.Y. May 31, 2011).

As noted above, *Jaffee* directs this Court to consider three broad factors in determining whether to recognize a privilege:  (1) whether the privilege serves private and public interests; (2) the evidentiary benefit that would result from denial of the privilege; and (3) recognition of the privilege among the States.  As detailed above, there is little to no evidentiary benefit that would result from the denial of the privilege.  The information obtained would likely be irrelevant and inadmissible.  Additionally, all fifty states have recognized the privilege at issue.  This leaves only the private and public interests to be examined.

The *Francis* court described those interests as follows:

> The success of a hospital's quality assurance review process "depends upon an atmosphere of confidence," *see* [*Jaffee*], 518 U.S. at 10, in which health care practitioners give frank and complete answers to questions posed by their peers. In his declaration, Gates opines that disclosing materials generated as part of a quality assurance review "would likely cause physicians and dentists to be less than open with the quality assurance reviewers for fear of the quality assurance report being used against them in litigation." According to Gates, reduced candor by physicians and dentists during the quality assurance review process would significantly impair the ability of MLK to: (1) analyze the facts of a given medical case; (2) take corrective action or implement corrective measures; (3) educate physicians and dentists based on past experience; and (4) determine whether discipline is warranted. The Court is persuaded that a privilege protecting peer review records from disclosure in medical or dental malpractice actions would promote the interests of health care practitioners, health care facilities and the public, by encouraging self-evaluation and improving the quality of care.

*Francis*, *supra*, at *5.  Other courts have noted that the public interest is "overwhelming." *Weekoty v. United States*, 30 F.Supp.2d 1343, 1347-48 (D.N.M. 1998) ("Given the 'overwhelming public interest' in providing physicians with a confidential context in which to evaluate the effectiveness of life-saving techniques and procedures, the Court is compelled to recognize the

self-critical analysis privilege in the context of morbidity and mortality conferences and will apply it in this case.")  "Clearly the public good—saving lives and correcting life threatening errors by physicians resulting from preserving the confidentiality of morbidity and mortality conferences—outweighs the general preference for open discovery."  *Id.* at 1348.

The Court agrees with the above authorities.  The public interest lies strongly in favor of recognizing a privilege for these materials in medical malpractice actions.  Again, the Court reiterates that while framed as both a malpractice action and a § 1983 claim, Veith cannot be successful on either claim without demonstrating medical malpractice.  While the failure to recognize such a privilege may not altogether eliminate peer review, the chilling effect of disclosure will significantly impede the overriding purpose of the peer review process – improving overall patient care.  Doctors will no doubt become increasingly more reluctant to engage in the process knowing that their opinions may become public and that they could conceivably be drawn into litigation against their will.  Accordingly, the Court finds that all three broad factors discussed in *Jaffee* weigh heavily in favor of recognizing he privilege.

The Health Care Defendants' motion for a protective order is GRANTED.  Plaintiff's motion to compel is DENIED.  The Health Care Defendants are instructed to provide all of the documents that they claim would fall under this privilege to the Court for an *in camera* inspection within seven (7) days of this order.  The Court will thereafter determine the scope and applicability of the privilege to each document.

IT IS SO ORDERED.


October 11, 2012                                            */s/ John R. Adams*
Dated                                                       JUDGE JOHN R. ADAMS
                                                            United States District Judge